BARRY WEAVER, Administrator of, the Estate of Beverly Davis Weaver, Deceased, Plaintiff v. GENERAL DOUGLAS McARTHUR O'NEAL, MATTHEW BRIAN DALE, AND MARY K. UMBERGER, Defendants

No. COA01-1098

(Filed 16 July 2002)

### Insurance— uninsured motorist—addition of person to policy with rejected coverage

Summary judgment was correctly granted for Farm Bureau Mutual Insurance Company in an action which sought uninsured motorist coverage for the death of Mrs. Weaver where Mrs. Weaver was added to a policy originally issued to Mr. Weaver as sole named insured with uninsured motorist coverage expressly rejected. Although plaintiff contended that the rejection of uninsured motorist coverage was not valid for Mrs. Weaver because

she did not sign the rejection form, the addition of Mrs. Weaver as a named insured constituted an amendment to an existing policy rather than the issuance of a new policy and a new rejection form was not required. Moreover, the addition of an "M" in the policy number to distinguish these policies from those of a separate stock company did not constitute issuance of a new policy.

Appeal by plaintiff from judgment entered by Judge Jack W. Jenkins Superior Court, Johnston County. Heard in the Court of Appeals on 22 May 2002.

*Mast, Schulz, Mast, Mills & Stem, P.A., by Bradley N. Schulz, for plaintiff-appellant.*

*George L. Simpson, III, for defendant-appellee.*

WYNN, Judge.

This appeal arises from an action to obtain uninsured motorist coverage for the vehicular death of Beverly Weaver notwithstanding the fact that her named insured husband, Barry Weaver, had expressly rejected the coverage before she was added as an insured. We uphold the trial court's grant of summary judgment favoring defendant North Carolina Farm Bureau Mutual Insurance Company.

The underlying incident occurred on 9 July 1999 when an automobile driven by General Douglas McArthur O'Neal and owned by Matthew Brian Dale collided head-on with another vehicle killing its driver, Beverly Weaver. Mary K. Umberger had borrowed the vehicle from Dale and permitted O'Neal to drive it.

After obtaining default judgments against O'Neal and Umberger, and dismissing without prejudice the action against Dale, the Estate of Beverly Davis Weaver brought this action under N.C. Gen. Stat. § 20-279.21(b)(3) directly against Mr. Weaver's insurer, Farm Bureau Mutual Insurance Company, seeking uninsured motorist coverage. Neither party disputes that O'Neal and Umberger were uninsured at the time of the accident.

Farm Bureau Mutual Insurance Company initially issued the subject policy to Mr. Weaver in 1981 as the sole named insured. He married Mrs. Weaver six years later. On renewing the policy in February 1992, Mr. Weaver expressly rejected both the Uninsured motorist and Underinsured motorist coverage on a

selection/rejection form promulgated by the North Carolina Insurance Rate Bureau and approved by the North Carolina Commissioner of Insurance. In October 1992, Mr. Weaver added Mrs. Weaver to the policy as a named insured; thereafter, the policy was renewed for consecutive six-month policy periods through the 3 February to 3 August 1999 policy period in which the accident occurred.

Following the grant of summary judgment favoring Farm Bureau Mutual Insurance Company, the estate of Mrs. Weaver appealed contending that the trial court erred in concluding that there are no genuine issues of material fact; and in making findings of fact not supported by the evidence. We disagree.

Initially, we point out that "[a] trial judge is not required to make finding[s] of fact and conclusions of law in determining a motion for summary judgment, and if he does make some, they are disregarded on appeal." *White v. Town of Emerald Isle*, 82 N.C. App. 392, 398, 346 S.E.2d 176, 179, *review denied*, 318 N.C. 511, 349 S.E.2d 874 (1986) (citation omitted). However, such findings and conclusions do not render a summary judgment void or voidable. *Id.* Accordingly, we disregard the findings of fact made by the trial judge and therefore do not reach the Estate of Mrs. Weaver's argument that such findings were not supported by the evidence.

Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. N.C.R. Civ. P. 56(c) (2001). An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. *See Koontz v. Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

Uninsured motorist coverage is governed by the Financial Responsibility Act, N.C. Gen. Stat. § 20-279.1, *et seq.* (2001). The purpose of the Act is to protect innocent victims of financially irresponsible motorists. *See Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 265, 382 S.E.2d 759, 763, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989). The Act is to be liberally construed, and if a motorist's policy conflicts with the Act, the Act prevails. *See id.; Wilmoth v. State Farm Mut. Auto Ins. Co.*, 127 N.C. App. 260, 262, 488 S.E.2d 628, 630, *review denied*, 347 N.C. 410, 494 S.E.2d 601 (1997).

WEAVER v. O'NEAL

[151 N.C. App. 556 (2002)]

N.C. Gen. Stat. § 20-279.21(b)(3) (2001) provides in pertinent part that: 1) "the selection or rejection of the uninsured motorist coverage by a name insured is valid and binding on all insureds and vehicles under the policy"; 2) "the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless the named insured makes a written request to exercise a different option"; 3) "the selection or rejection of uninsured motorist coverage or the failure to select or reject by the named insured is valid and binding on all insureds and vehicles under the policy"; and 4) a rejection of the uninsured motorist coverage must be on form promulgated by the North Carolina Insurance Rate Bureau and approved by the Commissioner of Insurance. If the named insured does not effectively reject Uninsured motorist coverage, the coverage will be written into the policy by operation of law with limits equal to the policy's bodily injury liability limits. *See id.*

The Estate of Mrs. Weaver argues that the selection or rejection of the Uninsured motorist coverage by named insured was not valid or binding on Mrs. Weaver because she did not sign a selection/rejection form relating to the coverage. However, the plain language of N.C. Gen. Stat. § 20-279.21(b)(3) does not support that interpretation.

N.C. Gen. Stat. § 20-279.21(b)(1) states that "the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended . . . policy unless the named insured makes a written request to exercise a different option." In the subject case, the record shows that the addition of Mrs. Weaver as a named insured was an amendment to policy.

As provided by the plain language of N.C. Gen. Stat. § 20-279.21, an amendment to a policy does not require the execution of a new selection/rejection form because it does not result in the issuance of a new policy. When interpreting the language of a statute, the primary rule of construction is that the intent of the legislature controls. *See Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 226, 166 S.E.2d 671, 679 (1969).

> It is well settled that " '[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give [the statute] its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.' " *State v. Camp*, 286 N.C.

148, 152, 209 S.E.2d 754, 756 (1974) (quoting 7 John M. Strong, North Carolina Index 2d Statutes § 5 (1968)).

*Union Carbide Corp. v. Offerman*, 351 N.C. 310, 314, 526 S.E.2d 167, 170 (2000).

In the present case, it is undisputed that Mr. Weaver, a named insured in the policy, rejected the Uninsured motorist coverage in February 1992 on a selection form promulgated by the Rate Bureau and approved by the Commissioner of Insurance. The form gave the insured the options of (1) rejecting combined uninsured/underinsured motorists coverage and selecting uninsured motorists coverage or (2) choosing combined uninsured/underinsured mortorists coverage or; (3) rejecting both uninsured and uninsured/underinsured motorists coverages. Additionally, Mr. Weaver signed separate statement, prepared by his insurance agent, in which he acknowledged:

I have been explained uninsured motorist and underinsured motorist coverage and the recommendation and importance of carrying this coverage by my agent, but I wish not to carry the underinsured motorist coverage and uninsured motorist coverage.

On 10 February 1992, Farm Bureau Mutual Insurance Company mailed Mr. Weaver an amended declarations page for the 2/3/92-8/3/92 policy period showing that the policy continued to provide liability, med pay, other than collision, and collision coverage, with the same limits as before, but that it no longer provided uninsured and underinsured motorists coverage at all. On 26 October 1992, Mrs. Weaver was added to the policy as a named insured and her 1983 Ford LTD was added to the policy as a covered auto. We hold that the addition of Mrs. Weaver as a named insured constituted an amendment to the existing policy, not the issuance of a new policy.

Moreover, we reject the Estate of Mrs. Weaver's argument that the insertion by Farm Bureau Mutual Insurance Company of an "M" in the policy number constituted the issuance of a new policy rather than an amended policy. The insertion of an "M" in the policy number began in 1994 when Farm Bureau Mutual Insurance Company sought to distinguish its policies from its separate stock insurance company. Thus, the subject policy with the number of AP3453749 became AMP3453749. The policy remained the same in all other aspects and it had not been cancelled nor lapsed since its inception. Indeed, Mr. Weaver recognized in his sworn statement that the policy in force at his wife's death was the same policy issued to him in 1981.

In sum, N.C. Gen. Stat. § 20-279.21 states that "the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended . . . policy unless the named insured makes a written request to exercise a different option." Since the policy in this case was amended to add Mrs. Weaver, the statute does not require her separate rejection of the uninsured motorist coverage. Accordingly, we uphold the grant of summary judgment in favor of Farm Bureau Mutual Insurance Company.

Affirmed.

Judges HUNTER and THOMAS concur.